UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

EDDIE O. STARBUCK, AS
PERSONAL REPRESENTATIVE OF
THE ESTATE OF WILLIAM
STARBUCK,

     Plaintiff,

v.                       Case No. 3:09-cv-13250-WGY-HTS

R.J. REYNOLDS TOBACCO
COMPANY, et al.,

     Defendants.

_____

November 16, 2018

## MEMORANDUM OF DECISION

Young, D.J.[1]

    This Engle-progeny tobacco case has gone to trial three times.
The first trial ("Starbuck I") ended in a mistrial because the
jury was deadlocked. See Clerk's Mins., ECF No. 98; Order, ECF
No. 127. The second trial ("Starbuck II") resulted in a verdict
against William Starbuck,[2] but the presiding judge granted a new

---

[1] Of the District of Massachusetts, sitting by designation.

[2] The original plaintiff and decedent, William Starbuck ("Mr.
Starbuck"), was alive for the first two trials, but he passed away
on October 18, 2016. Defs.' Suggestion Death Pl. William Starbuck,
Ex. A, Certification Death, ECF No. 275-1. Eddie O. Starbuck ("Ms.
Starbuck"), as the personal representative of William Starbuck's
estate, filed a Second Amended Complaint on May 10, 2018, Second
Am. Compl. ("Pl.'s Compl."), ECF No. 286, converting the lawsuit
into a wrongful death and survival action.

trial because the jury's finding that Mr. Starbuck was not addicted to cigarettes was against the great weight of the evidence. Mem. Op. and Order Regarding Pl.'s Mot. New Trial and Defs.' Mot. Att'ys' Fees and Costs 3-5, 37-44, ECF No. 266. The third trial ("Starbuck III") again resulted in a verdict for the defendants; again because the jury found Mr. Starbuck was not addicted to cigarettes. Verdict 1, ECF No. 384; J., ECF No. 390.

The case came before this Court on the Defendants', Philip Morris USA Inc. and R.J. Reynolds Tobacco Company (collectively, the "Tobacco Companies"), motion for partial summary judgment ("Defs.' Motion"), ECF No. 290. See also Defs.' Mem. Law Supp. Mot. Partial Summ. J. ("Defs.' Mem."), ECF No. 291; Opp'n Defs.' Mot. Partial Summ. J. ("Pl.'s Opp'n"), ECF No. 310; Defs.' Reply Mem. Supp. Mot. Partial Summ. J. ("Defs.' Reply"), ECF No. 311. This Court held a hearing on this motion on September 20, 2018. The Court denied the motion from the bench but reserved the right to enter a written opinion. See Min. Entry, ECF No. 345. This is that opinion.

The Tobacco Companies argue that Ms. Starbuck is precluded from claiming that Mr. Starbuck suffered from chronic obstructive pulmonary disorder ("COPD") or that COPD caused his death. Defs.' Mem. 1. The Tobacco Companies base their argument on various statements made by the Starbucks' counsel during status

conferences and sidebars before or during the trials in <u>Starbuck I</u> and <u>Starbuck II</u>. <u>Id.</u> at 2-8. In various forms, the Starbucks' counsel told the Court (outside the jury's presence) that Mr. Starbuck planned to "drop," Defs.' Mem., Ex. A, Tr. Telephone Conference Honorable James G. Carr ("Tr. Telephone Conference April 28, 2014") 5, ECF No. 291-1, or "withdraw," Defs.' Mem., Ex. B, Jury Trial Proceedings Honorable James G. Carr ("Jury Trial May 12, 2014") 133-34, ECF No. 291-2, the argument that he suffered from COPD. Seizing on these statements, the Tobacco Companies advance various theories about why Ms. Starbuck is precluded from arguing in <u>Starbuck III</u> that her husband suffered from COPD. The Tobacco Companies argue that (1) the Starbucks' counsel's statements were a stipulation or judicial admission that Mr. Starbuck did not have COPD, Defs.' Mem. 1, 9-14; (2) the doctrine of equitable estoppel or inconsistent positions precludes Ms. Starbuck from claiming that her husband had COPD, <u>id.</u> at 1, 14-16; and (3) Mr. Starbuck waived any claim he had COPD, <u>id.</u> at 1, 14-16. Alternatively, the Tobacco Companies argue that the Starbucks' counsel's statements are admissions by a party opponent under Federal Rule of Evidence 801(d)(2)(A) and ought be admitted at trial. <u>Id.</u> at 16-17.

The Tobacco Companies' arguments are based on a misapplication of the doctrines of judicial admission, equitable

estoppel, and waiver, and Federal Rule of Evidence 801(d)(2)(A) does not apply. The Court denies the motion for the reasons below.

## I.  Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court "must draw all reasonable inferences in favor of the nonmoving party." See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). Where "no facts are in dispute and only questions of law are involved, the case is 'ripe for a summary judgment.'" See Palmer v. Chamberlain, 191 F.2d 532, 540 (5th Cir. 1951) (quoting Bartle v. Travelers Ins. Co., 171 F.2d 469, 471 (5th Cir. 1948)).[3]

## II.  Analysis

### A. Equitable Estoppel

For ease of analysis, the Court considers the doctrine of equitable estoppel first. "Equitable estoppel is based on principles of fair play and essential justice and arises when one party lulls another party into a disadvantageous legal position."

---

[3] Decisions handed down by the former Fifth Circuit before the close of business on September 30, 1981 are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981).

Florida Dep't of Health & Rehab. Servs. v. S.A.P, 835 So. 2d 1091, 1096 (Fla. 2002). "The elements of equitable estoppel are (1) a representation as to a material fact that is contrary to a later-asserted position, (2) reliance on that representation, and (3) a change in position detrimental to the party claiming estoppel, caused by the representation and reliance thereon." State v. Harris, 881 So. 2d 1079, 1084 (Fla. 2004) (citing State Dep't of Revenue v. Anderson, 403 So. 2d 397, 400 (Fla. 1981)). "Moreover, the party asserting equitable estoppel must prove that he or she reasonably relied on the conduct of the other party." 22 Fla. Jur. 2d Estoppel and Waiver § 69 (2018) (citing Miller v. American Banker's Ins. Grp., 85 F. Supp. 2d 1297, 1301 (S.D. Fla. 1997) (applying Florida law)).

The Tobacco Companies' equitable estoppel argument fails because they do not show reliance or a detrimental change in position. See Defs.' Mem. 14-16. They furnish no explanation of how, for purposes of the third trial, they relied on the Starbucks' counsel's prior statements about not pursuing liability for COPD in Starbuck I and Starbuck II. See id. The Tobacco Companies also point to nothing demonstrating how they detrimentally changed their position in reliance on these prior statements. The closest they come to such a showing is a conclusory assertion that "Plaintiff's counsel affirmatively sought to prevent Defendants

from raising issues about COPD." Id. at 16. Even if this statement were true with respect to the first two trials, it says nothing about how the Tobacco Companies detrimentally changed their position for the third trial in reliance on the prior statements.

The Tobacco Companies addressed the issue of detrimental reliance for the first time at oral argument. There, the Tobacco Companies represented that had they believed Mr. Starbuck would pursue a claim for COPD in the third trial, they would have deposed him about the progression of the disease before he passed away on October 18, 2016. The Tobacco Companies alleged that they did not do so because they believed Mr. Starbuck had conceded he did not have COPD.

The Tobacco Companies' representation that they would have retaken Mr. Starbuck's deposition strikes the Court as hindsight speculation. The Tobacco Companies knew, at the very least, that Mr. Starbuck still planned to sue them for damages related to lung cancer, but that did not prompt them to retake his deposition at any point during the two years between the grant of a retrial in 2014 and Mr. Starbuck's death in 2016. The Tobacco Companies did not explain why a claim based on COPD would have prompted them to retake Mr. Starbuck's deposition, when his claim based on lung cancer (of which they were aware) did not.

The Court is not convinced that the Tobacco Companies were

prejudiced.  An inability to retake Mr. Starbuck's deposition before his death did not put them in any worse of a position than typical defendants in a wrongful death or survival action.  The defendant in a wrongful death or survival action is often unable to depose the decedent because the decedent is usually dead before the lawsuit begins.  Moreover, the Tobacco Companies were still able to depose Mr. Starbuck's wife, treating physician, and expert witnesses, all of whom could provide, individually or in combination, the same (if not more) information than could Mr. Starbuck.  See Case Management Order 2-3, ECF No. 283.  Thus, the fact that the Tobacco Companies were unable to retake Mr. Starbuck's deposition does not meaningfully prejudice them.

In addition, after Starbuck II, Ms. Starbuck filed a Second Amended Complaint, putting the Tobacco Companies on notice that she planned to allege that Mr. Starbuck suffered from COPD. Pl.'s Compl. ¶¶ 4-5, 42.  Pursuant to its Case Management Order, the Court opened a new discovery period on May 9, 2018, during which Ms. Starbuck provided updated expert reports expressing opinions that Mr. Starbuck had COPD, that smoking cigarettes caused it, and that COPD contributed to his death.  See Pl.'s Opp'n 7 & Exs. A-E.  The Tobacco Companies had ample warning that Ms. Starbuck was pursuing a claim based on COPD and ample opportunity to depose her or her experts on the topic.

Moreover, this argument did not appear in the Tobacco Companies' motion, memorandum, or reply. A party cannot raise new arguments in support of summary judgment for the first time in a reply brief, WBY, Inc. v. DeKalb Cty., 695 F. App'x 486, 491–92 (11th Cir. 2017) (citing Herring v. Secretary, Dep't of Corr., 397 F.3d 1338, 1342 (11th Cir. 2005)), let alone at oral argument, see Rivas v. Berryhill, No. 16-cv-61861-BLOOM/Valle, 2018 WL 328796, at *4 (S.D. Fla. Jan. 9, 2018) (declining "to consider a new argument Plaintiff raised ore tenus at the summary judgment hearing"). Thus, the Tobacco Companies' arguments in support of the reliance and detrimental-change-of-position elements are not properly before the Court.

Considering these facts, as well as the Tobacco Companies' failure to show reasonable reliance or a detrimental change in position, the Court rejects their theory of equitable estoppel.

**B. Waiver**

Whether Florida substantive law or federal law governs the waiver analysis is unsettled in the Eleventh Circuit. See Searcy v. R.J. Reynolds Tobacco Co., 902 F.3d 1342, 1359 (11th Cir. 2018). This Court, however, need not resolve that issue because

> [t]he general framework for waiver under federal and Florida law are also substantially similar. Under federal law, "[w]aiver is the voluntary, intentional relinquishment of a known right." Glass v. United of Omaha Life Ins. Co., 33 F.3d 1341, 1347 (11th Cir. 1994). Florida law is, for our purposes here, the

same.  See Major League Baseball v. Morsani, 790 So. 2d
1071, 1077 n.12 (Fla. 2001) ("Waiver is the voluntary
and intentional relinquishment of a known right, or
conduct which implies the voluntary and intentional
relinquishment of a known right.").

Id.

"The elements of waiver are: (1) the existence at the time of

the waiver of a right, privilege, advantage, or benefit which may

be waived; (2) the actual or constructive knowledge of the right;

and (3) the intention to relinquish the right." Leonardo v. State

Farm Fire & Cas. Co., 675 So. 2d 176, 178 (Fla. Dist. Ct. App.

1996).  "Further, the waiving party must possess all of the

material facts for its representations to constitute a

waiver." L.R. v. Department of Children & Families, 822 So. 2d

527, 530 (Fla. Dist. Ct. App. 2002).  Waiver "requires proof of

conduct demonstrating a clear intent to relinquish the known right,

and as such, a waiver must be knowing, intelligent and voluntary."

Liberty Mut. Ins. Co. v. Aventura Eng'g & Constr. Corp., 534 F.

Supp. 2d 1290, 1315 (S.D. Fla. 2008) (applying Florida law).

"Florida has a long standing public policy in favor of

adjudication of disputes on the merits wherever possible."

Westgate Miami Beach, Ltd. v. Newport Operating Corp., 55 So. 3d

567, 574 (Fla. 2010) (quoting Westgate Miami Beach, Ltd. v. Newport

Operating Corp., 16 So. 3d 855, 860 (Fla. Dist. Ct. App. 2009)

(Cope, J., concurring)).  This policy likely extends to waiver

doctrine, as recent cases from the Florida Supreme Court and the Eleventh Circuit suggest the standard for finding waiver in the state is demanding.

In Schoeff v. R.J. Reynolds Tobacco Company, 232 So. 3d 294 (Fla. 2017), the Florida Supreme Court abrogated the reasoning of two lower court decisions, R.J. Reynolds Tobacco Company v. Hiott, 129 So. 3d 473 (Fla. Dist. Ct. App. 2014), and Philip Morris USA, Inc. v. Green, 175 So. 3d 312 (Fla. Dist. Ct. App. 2015), where those courts had found waiver of the intentional tort exception to Florida's comparative fault statute.[4] In Hiott, the Florida First District Court of Appeal found waiver in the plaintiff's assurances to the jury throughout trial that the decedent was partially at fault for his illness, the trial court's instructions to the jury that it would reduce compensatory damages by whatever percentage of fault the jury attributed to the smoker, and the fact that the plaintiff never alerted the jury to the intentional tort exception to the comparative fault statute. See Hiott, 129 So. 3d at 480-81. In Green, the Florida Fifth District Court of Appeal found

---

[4] Schoeff, Smith, and Searcy dealt with whether a plaintiff waived the right to the intentional tort exception to Florida's comparative fault statute, which normally allocates damages according to each party's level of fault. Under the intentional tort exception, the intentional tortfeasor bears 100% of the liability, regardless of any contributory fault by the plaintiff. These three decisions are instructive as to the issue of waiver in Engle-progeny cases.

that the plaintiffs had waived the intentional tort exception when they "made similar arguments to the jury." Schoeff, 232 So. 3d at 305 (citing Green, 175 So. 3d at 315-16). The Florida Supreme Court disagreed "with the Fifth District in Green and the First District in Hiott to the extent they held that the intentional tort exception is waived when an Engle progeny plaintiff argues comparative fault on the negligence counts, and . . . reject[ed] the Fourth District majority's theory of waiver below." Schoeff, 232 So. 3d at 306. The Florida Supreme Court did not articulate why it rejected the Hiott and Green courts' reasoning. Id. In applying Schoff to Engle-progeny cases, the Eleventh Circuit noted that "it is unclear in what situations, if any, the Florida Supreme Court might find waiver to have occurred." Smith v. R.J. Reynolds Tobacco Co., 880 F.3d 1272, 1282 (11th Cir. 2018). What is clear, however, is that this Court must operate under the "infer[ence] that the [Florida Supreme Court] is not keen on the notion of waiver" in such cases. Id.; Searcy, 902 F.3d at 1362.

Applying that strict standard here, the Court rules that neither Mr. Starbuck nor his counsel manifested a clear intent knowingly, intelligently, and voluntarily to waive, for all time, the right to allege that he suffered from COPD. Mr. Starbuck could not have made a knowing waiver because at the time his counsel made the statements in question, Mr. Starbuck was not yet aware of

all the material facts. See L.R., 822 So. 2d at 530. At the time counsel said Mr. Starbuck was going to "drop" or "withdraw" the issue of COPD, Mr. Starbuck was still alive, and the final chapters of his life had not been written. Mr. Starbuck would go on to live two more years, during which time additional evidence may have emerged that he suffered from COPD. Indeed, the cause of Mr. Starbuck's death could not have been ascertained until after he died. Neither Mr. Starbuck nor his attorney could have predicted the cause of his death. Mr. Starbuck could not have possessed all the material facts in 2014 knowingly to waive his (or his successor's) right to seek damages based on COPD.

Nor did the statements and actions of Mr. Starbuck's counsel evince an unmistakable intent forever to waive the right to seek damages based on COPD. Though not itself dispositive, Mr. Starbucks' counsel never used the word "waive" or a variation thereof regarding COPD. Rather, Mr. Starbuck's attorney said during pretrial conferences and sidebars that he was going to "drop," Tr. Telephone Conference April 28, 2014 at 5, or "withdraw," Jury Trial May 12, 2014 at 133-34, COPD from the case. The best interpretation of these statements is that counsel was conveying that he would not argue that Mr. Starbuck suffered from COPD at those very trials, to (1) simplify the issues for the jury and (2) conform Mr. Starbuck's theory of the case to the evidence

as it existed at the time.

Take for example the statement made by the Starbucks' counsel in a telephonic pretrial conference in Starbuck I:

> MR. BYRD [Plaintiff's counsel]:    Thank you,    Your Honor.  Mr. Byrd on behalf of Mr. Starbuck.  Obviously, just as you said, there are some things in the instructions that we don't like and we would object to. . . . But I think on the whole, you know, it's a sound set of jury instructions. . . .
>
> I will inform the Court of one thing that I think will, frankly, benefit everything.  It's a decision that we have just come to a conclusion on and actually affects some things that the defendants have filed, which we were hoping that they would not file until we did, but I believe to help proceed –– to make sure the Court –– we can do this efficiently, it is our intention on behalf of Mr. Starbuck to drop our COPD claim; which, number one, would make the verdict form a little bit simpler; and it sort of certainly streamlines the issues in the case.  We're just talking about lung cancer.  Now, we will be seeking all of the damages from his lung cancer, and we certainly have theories and evidence and things to support –– we will tell the jury that not only did he have to deal with lung cancer but that his lung cancer led to –– whether you call it ARDS or COPD or whatever, the lung cancer surgery led to breathing problems that he has to live with even to this day and on.  We'll certainly seek all those damages because they stem from lung cancer.  To the extent we can show they stem from lung cancer, we're going to do that.  But we are not going to seek a separate disease of COPD individual [sic] on its own.  I think that will streamline some things. That will probably change question 2 in your verdict form.

Tr. Telephone Conference April 28, 2014 at 5-6 (emphasis added).

Mr. Byrd's entire statement suggests that Mr. Starbuck was dropping COPD for the strategic purpose of simplifying the issues and streamlining the verdict form.  Likewise, when Mr. Byrd stated in

Starbuck I that Mr. Starbuck would "withdraw the COPD," Jury Trial May 12, 2014 at 134, it was in the context of a sidebar discussion regarding the testimony he planned to elicit from Mr. Starbuck's treating physician.  These statements do not suggest an intent **permanently** to forego any claim based on COPD, including for purposes of a future retrial.

The record also suggests that the Starbucks' counsel withdrew the issue of COPD from the previous trials in order to conform Mr. Starbuck's theory of the case to the evidence.  One of the Tobacco Companies' experts, Dr. Frazier, issued a report before Starbuck I concluding that Mr. Starbuck did not have COPD, which may have encouraged Mr. Starbuck's lawyer to drop the issue from the trials in Starbuck I and Starbuck II.  See Pl.'s Opp'n, Ex. C, Jury Trial Proceedings Honorable Mark W. Bennett ("Jury Trial Dec. 11, 2014") 139-40, 294-95, ECF No. 310-3.  The record reflects that as a matter of trial strategy, the Starbucks' attorney wished to focus on lung cancer because he believed Florida law enabled the jury to consider damages and complications arising from lung cancer surgery:

> MR. BYRD: They're comparing apples and oranges.  They're talking about COPD --
>
> THE COURT:    I don't want to hear about COPD.
>
> MR. BYRD: Exactly.  That's my point.  We took it out of the case, as we have a right to do.

THE COURT:    At any rate, if you want [Dr. Amgott] to be able to give his opinion, that's fine with me.

MR. BYRD: If he's going to come and testify, I'm not going to stop him from testifying, but he needs to be restricted to what he said in his opinion.  We don't have to tell them the theory of our case.  We dropped COPD because we –– maybe we ––

THE COURT:    Well, that's a red herring.

MR. BYRD: Exactly.  COPD doesn't matter to this argument whatsoever.  But the point is, lung cancer –– we've always said we want the damages from lung cancer surgery.  We have good Florida jury instruction law that we need to talk about that talks about surgical –– you know, the complications from surgery.  They're fully on notice, and they had Dr. Burns' expert testimony saying that lung cancer surgery caused the ARDS.

Jury Trial Dec. 11, 2014 at 142.  Again, however, Mr. Byrd's statements do not manifest a clear intent knowingly, intelligently, and voluntarily to waive the right to seek damages based on COPD for all time.[5]  Ms. Starbuck summed it up well, observing that Mr. Starbuck's

decision to pursue only damages for lung cancer at most relinquished his right to pursue COPD damages in the earlier trials in this case.  He did not evince a 'clear intent' to forego theories of recovery in a future trial based on harm he had not yet experienced, i.e., two more years of COPD and his eventual death.

Pl.'s Opp'n 13 (emphasis added).

The Court agrees.  As such, Mr. Starbuck did not waive the right to assert a claim based on COPD for purposes of the

_____

[5] Nor do any of counsel's other statements cited by Defendants persuade the Court.

third trial.

### C. Judicial Admission or Stipulation

The Tobacco Companies argue that Ms. Starbuck cannot maintain any claims based on COPD because her husband's lawyer made judicial admissions in the first two trials that conclusively removed this issue from the litigation. Defs.' Mem. 9-10.[6] This argument fails for two reasons. First, Mr. Byrd's statements regarding COPD in Starbuck I and Starbuck II do not constitute judicial admissions. Second, even if Mr. Byrd's statements were judicial admissions for the earlier trials, they do not bind the parties in this retrial.

A judicial admission is a statement by a party or its counsel that removes a factual issue from dispute in a litigation and binds both parties on trial and appeal. See Cooper v. Meridian Yachts, Ltd., 575 F.3d 1151, 1178 (11th Cir. 2009) ("[F]acts judicially admitted are facts established not only beyond the need of evidence to prove them, but beyond the power of evidence to controvert them.") (quoting Hill v. Federal Trade Comm'n, 124 F.2d 104, 106 (5th Cir. 1941)). To be binding, a judicial admission must be "unequivocal" and "unambiguous." Crowe v. Coleman, 113 F.3d 1536, 1542 (11th Cir. 1997) (quoting Glick v. White Motor Co., 458 F.2d

---

[6] As Ms. Starbuck accurately points out, the Tobacco Companies' "stipulation" theory is coextensive with its "judicial admission" theory. Pl.'s Opp'n 7 n.4. This Court thus analyzes both together as judicial admissions.

1287, 1291 (3d Cir. 1972)).  Judicial admissions "must be statements of fact that require evidentiary proof, not statements of legal theories." Teleglobe USA Inc. v. BCE Inc. (In re Teleglobe Commc'ns Corp.), 493 F.3d 345, 377 (3d Cir. 2007); see also Alabama-Tombigbee Rivers Coal. v. Norton, 338 F.3d 1244, 1254 n.9 (11th Cir. 2009) (noting that "[l]egal arguments are distinguishable from judicial admissions"); Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC, 477 F.3d 383, 394-95 (6th Cir. 2007) (holding that a party's concession that it was not the owner of a renewal copyright "dealt with legal conclusions, and not matters of fact, and therefore the district court erred in concluding that the statements were judicial admissions").

As a general matter, the Seventh Circuit has cautioned against construing a lawyer's comments as a judicial admission.  Otherwise, "statements made by lawyers in opening and closing arguments, in making objections, at side bars, and in questioning witnesses would be treated as pleadings and searched for remarks that might be construed as admissions though neither intended nor understood as such.  Trials would be turned into minefields." Robinson v. McNeil Consumer Healthcare, 615 F.3d 861, 872 (7th Cir. 2010) (citing MacDonald v. General Motors Corp., 110 F.3d 337, 340 (6th Cir.

1997)).[7]

Here, counsel's statements about "drop[ping]" or "withdraw[ing]" the issue of COPD from Starbuck I and Starbuck II were not judicial admissions. None of Mr. Byrd's statements conceded as a factual matter that Mr. Starbuck did not have COPD. Rather, they merely communicated that his litigation strategy did not include arguing that Mr. Starbuck suffered damages from COPD.

Some courts have treated such tactical pronouncements as judicial admissions when they function to relieve the opposing party from proving a factual issue, but in so doing, collapse the notion of judicial admission into that of waiver. For example,

---

[7] The Eleventh Circuit generally applies judicial admission doctrine to the parties' representations of fact in court filings. See, e.g., Metlife Life & Annuity Co. of Conn. v. Akpele, 886 F.3d 998, 1004-05 (11th Cir. 2018) (deeming a statement in an affidavit made in response to a motion for summary judgment a judicial admission); Cooper v. Meridian Yachts, Ltd., 575 F.3d 1151, 1177-78 (11th Cir. 2009) (ruling that defendants judicially admitted they lacked a principal place of business in Florida where they denied that fact in their answer to the plaintiff's complaint); United States v. Watkins, 120 F.3d 254, 255 (11th Cir. 1997) (per curiam) (judicial admission based on statements in government's response to a motion under Federal Rule of Criminal Procedure 41(e)); Best Canvas Prods. & Supplies, Inc. v. Ploof Truck Lines, Inc., 713 F.2d 618, 621 (11th Cir. 1983) ("[A] party is bound by the admissions in his pleadings. . . . [the defendant's] admission in its pleadings is binding and conclusive to establish that the cause of action arose in Georgia."). But see Godwin v. Nat'l Fire Ins. Co. of Pittsburgh, Civ. A. No. 2:07cv167-SRW (WO), 2008 U.S. Dist. LEXIS 10906, at *2-3 (M.D. Ala. Feb. 12, 2008) (granting motion for summary judgment on the basis of plaintiff's judicial admission in a pretrial conference that he would not offer expert testimony regarding the cause of his injury).

the Tobacco Companies cite <u>Martinez</u> v. <u>Bally's Louisiana, Inc.</u>, 244 F.3d 474 (5th Cir. 2001) as being on "all fours" with the Starbucks' case. Defs.' Mem. 13. There, as here, the plaintiff indicated that she was not planning to show damages for a certain type of injury in her case. <u>Martinez</u>, 244 F.3d at 475. When, in response to the defendant's motion for summary judgment, she sought to introduce evidence supporting injury claims of that type, she was precluded from doing so. <u>Id.</u> The Fifth Circuit in <u>Martinez</u> held that the plaintiff's lawyer's prior statements waived those injury claims because her lawyer's prior statements were intentional and prejudiced the defendants by preventing them from pursuing discovery on that issue. <u>Id.</u> at 476-77. The Fifth Circuit, however, construed this waiver as a judicial admission, noting that "a statement made by counsel during the course of trial may be considered a judicial admission if it was made intentionally as a waiver, releasing the opponent from proof of fact." <u>Id.</u> at 466 (citing <u>McCullough</u> v. <u>Odeco, Inc.</u>, No. CIV.A. 90-3868, 1991 U.S. Dist. LEXIS 7725, at *2 (E.D. La. May 30, 1991)); <u>see also</u> <u>Meyer</u> v. <u>Berkshire Life Ins. Co.</u>, 372 F.3d 261, 264-65 (4th Cir. 2004) ("Judicial admissions are not . . . limited to affirmative statements that a fact exists. They also include intentional and unambiguous waivers that release the opposing party from its burden to prove the facts necessary to establish the waived conclusion of

law.").

While the effect of a waiver may, at times, be the same as that of a judicial admission -- releasing the opposing party's burden to prove a certain fact -- its constitutive elements and animating principles differ. A waiver is an "intentional relinquishment or abandonment of a known right," United States v. Olano, 507 U.S. 725, 733 (1993), while a judicial admission is a stipulation to a certain fact or application of law to fact that removes a factual dispute from contention, Christian Legal Soc'y Chapter of the Univ. of Cal. v. Martinez, 561 U.S. 661, 676-77 (2010). Both rules seek to encourage judicial efficiency and fairness, but concern about prejudice to the opposing party is a touchstone of waiver doctrine, while the court's truth-seeking mission undergirds the doctrine of judicial admissions. Noting that the Eleventh Circuit has not analyzed intentional waivers of legal arguments as judicial admissions, this Court declines to apply waiver analysis to an alleged judicial admission.[8]

The Tobacco Companies' argument that Mr. Starbuck judicially admitted that he did not suffer from COPD also fails because the statements they construe as such an admission were made during prior trials. "Normally, judicial admissions are binding for the

---

[8] The Tobacco Companies would fare no better here under a waiver analysis, as demonstrated in Section B.

purpose of the case in which they are made, not in separate and subsequent cases." <u>Raiford</u> v. <u>Abney (Matter of Raiford)</u>, 695 F.2d 521, 523 (11th Cir. 1983) (citing <u>State Farm Mut. Auto. Ins. Co. v. Worthington</u>, 405 F.2d 683, 687 (8th Cir. 1968)). One narrow exception is that a judicial admission in the form of a stipulation can bind the parties in a subsequent trial if it was "an affirmative, formal, factual statement" that continues to be true, and maintaining its binding effect does not result in "manifest injustice." <u>See</u> <u>Wheeler</u> v. <u>John Deere Co.</u>, 935 F.2d 1090, 1099 (10th Cir. 1991). A stipulation made in an earlier trial is not binding in a later trial, however, unless it was intended to be. <u>Hunt</u> v. <u>Marchetti</u>, 824 F.2d 916, 917-18 (11th Cir. 1987) (concluding that the district court properly denied the binding effect of a stipulation applying to the first trial that was not intended to bind the parties in a "subsequent retrial of the case").

Here, there is no indication that Mr. Starbuck's counsel's statements about COPD claims were intended to bind future actions, nor could they be fairly characterized as "factual statements." In the Tenth Circuit products liability case the Tobacco Companies cite, the defendant sought to withdraw for purposes of a retrial a written stipulation acknowledging the feasibility of a safer product design. <u>Wheeler</u>, 935 F.2d at 1099. As the defendant did

not contest the continued veracity of this statement, but merely the strategic consequences of its introduction in evidence, the Tenth Circuit affirmed the district court's choice to hold the defendant to its prior statement. Id. Here, however, not only does Ms. Starbuck contest the continued veracity of an alleged claim that her husband did not have COPD, but the Tobacco Companies' own expert report undermines it. See Pl.'s Opp'n, Ex. E, Suppl. Report William D. Frazier ¶ 5, ECF No. 310-5.

A more analogous case is Hunt v. Marchetti, 824 F.2d at 917. There, on retrial, the plaintiff sought to "characterize the statements of the [defendant's] attorney [in the first trial] as stipulating to the fact that [the plaintiff] was not in Dallas on the day of the Kennedy assassination," when the statements in question were actually "a stipulation that the question of [the plaintiff's] alleged involvement in the assassination would not be contested at trial." Id. Likewise, in Starbuck I and Starbuck II, Mr. Byrd conceded only the tactical point that the COPD claims would not be raised at those trials. Where, as here, the stipulation served such a "limited purpose" as to narrow the factual issues in dispute in a given trial, the Court can presume that it was "not intended to apply to a subsequent retrial of the case." Id. at 918.

Even were this Court to rule that the Starbucks had previously

stipulated that Mr. Starbuck did not suffer from COPD (which it does not), it would disregard such a stipulation as "erroneous" given the record evidence.  See <u>Morrison</u> v. <u>Genuine Parts Co.</u>, 828 F.2d 708, 709-10 (11th Cir. 1987).

### D. Admission by Party Opponent Under Federal Rule of Evidence 801(d)(2)(A)

Alternatively, the Tobacco Companies argue that Mr. Byrd's statements about withdrawing or dropping a claim for COPD in <u>Starbuck I</u> and <u>Starbuck II</u> are admissions by a party opponent, and thus admissible non-hearsay statements per Federal Rule of Evidence 801(d)(2)(A).  The Court rejects this argument because counsel's statements were not admissions of fact at all, but merely articulations of counsel's conception of the legal theory of the case.  A rule that would admit counsel's statements in <u>Starbuck I</u> and <u>Starbuck II</u> under 801(d)(2)(A) would have the unwelcome effect of discouraging lawyers from streamlining trials by removing certain issues from contention.  Were this Court to adopt such a rule, lawyers would be hesitant ever to narrow the issues in dispute, lest such choices be turned into evidentiary admissions in a future trial.

### III. Conclusion

The Tobacco Companies' arguments that Ms. Starbuck should be precluded from raising any claims about COPD based on counsel's statements in <u>Starbuck I</u> and <u>Starbuck II</u> rely on a misapplication

of the doctrines of equitable estoppel, waiver, and judicial admission. The Tobacco Companies' contention that the Starbucks' counsel's statements are admissible under Federal Rule of Evidence 801(d)(2)(A) is also misguided and would have undesirable implications for case management. Accordingly, on September 10, 2018 this Court **DENIED** the Defendants' Motion for Partial Summary Judgment, ECF No. 290.

/s/ William G. Young
WILLIAM G. YOUNG
UNITED STATES DISTRICT JUDGE

Copies to:

Counsel of record