IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| EDDIE O. STARBUCK, as personal representative of the ESTATE OF WILLIAM STARBUCK, | Cause No. 3:09-cv-13250-WGY-HTS |
| Plaintiff, | ORDER |
| vs. | |
| R.J. REYNOLDS TOBACCO COMPANY, et al., | |
| Defendants. | |

On November 7, 2018, a jury of seven concluded after an eight-day trial that now-deceased William Starbuck was not addicted to cigarettes containing nicotine, resulting in a verdict in favor of Defendants R.J. Reynolds Tobacco Company and Philip Morris USA, Inc. (collectively "Defendants"). (*See* Doc. 384.) Plaintiff Eddie O. Starbuck, William's wife, seeks a new, fourth trial on the grounds that the jury's verdict "flies in the face of the evidence." (Doc. 402.) For the reasons discussed below, that motion is denied.

## BACKGROUND

### I. The *Engle* Cases

On October 31, 1994, a Florida trial court certified as a nationwide class action a group of smokers and their survivors, Fla. R. Civ. P. 1.220(b)(3), defining

1

the class as: "All United States citizens and residents, and their survivors, who have suffered, presently suffer or who have died from diseases and medical conditions caused by their addiction to cigarettes that contain nicotine." *Engle v. Liggett Group, Inc. (Engle III)*, 945 So. 2d 1246, 1256 (Fla. 2006) (recounting procedural history). In 1996, Florida's intermediate appellate court affirmed the order certifying the class, but reduced the class to include only Florida smokers. *See R.J. Reynolds Tobacco Co. v. Engle (Engle I)*, 672 So. 2d 39, 42 (Fla. 3d Dist. Ct. App. 1996). In 1998, the trial court issued a trial plan, dividing trial proceedings into three phases: "Phase I consisted of a year-long trial to consider the issues of liability and entitlement to punitive damages for the class as a whole. The jury considered common issues relating exclusively to the defendants' conduct and the general health effects of smoking." *Engle III*, 945 So. 2d at 1256 (internal citation omitted). In 1999, at the end of Phase I, the jury returned a verdict in favor of the *Engle* class and against the tobacco defendants on all counts. *Id.* at 1256–57.

Phase II was divided into two subparts: Phase II-A was intended to resolve compensatory damages for the three individual class representatives while Phase II-B was to result in a jury determination of a total lump sum punitive damage award, if any, to be assessed in favor of the class as a whole. *Id.* at 1257. At the conclusion of Phase II-A, the jury determined the three individual class representatives were entitled to compensatory damages in varying amounts,

2

totaling $12.7 million. *Id.* The jury subsequently determined in Phase II-B that the punitive damages lump-sum for the entire class was $145 billion, without allocation to any class member. *Id.* In Phase III, new juries were to decide the individual liability and compensatory damages claims for each class member (estimated at 700,000 people). *Id.* at 1258. The plan then contemplated the punitive damages would be divided among successful class members. *Id.*

However, the defendants appealed, and the Florida intermediate court of appeals reversed the final judgment with instructions that the class be decertified. *See Liggett Group, Inc. v. Engle (Engle II)*, 853 So. 2d 434 (Fla. 3d Dist. Ct. App. 2003). The class appealed to the Florida Supreme Court, which held that decertification at Phase III was appropriate, but with res judicata effect given to certain Phase I findings. *Engle III*, 945 So. 2d at 1254, 1269. The Court vacated the punitive damages award, concluding the trial court erred in allowing the jury to determine a lump sum punitive damages amount before finding the amount of total compensatory damages for the class. *Id.* at 1262–65. The Court also held that the *Engle* class had a membership cutoff date of November 21, 1996. *Id.* at 1274–76.

In 2013, the Florida Supreme Court held that giving preclusive effect to these Phase I findings did not violate the due process rights of tobacco companies. *Philip Morris USA, Inc. v. Douglas*, 110 So. 3d 419, 430 (Fla. 2013). As a result, *Engle* "progeny" plaintiffs may use the *Engle* jury findings to establish the conduct elements for the strict liability, negligence, breach of express and implied

3

warranty, fraudulent concealment, and conspiracy to fraudulently conceal claims alleged by the *Engle* class. *Id.* at 436; *see also Graham v. R.J. Reynolds Tobacco Co.*, 857 F.3d 1169 (11th Cir. May 18, 2017) (en banc); *Burkhart v. R.J. Reynolds Tobacco Co.*, 884 F.3d 1068 (11th Cir. Mar. 7, 2018); *Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342 (11th Cir. 2018). Thus, in individual "progeny" cases, "individual plaintiffs must establish (i) membership in the *Engle* class; (ii) individual causation, i.e., that addiction to smoking the *Engle* defendants' cigarettes containing nicotine was a legal cause of the injuries alleged; and (iii) damages." *Searcy*, 902 F.3d at 1346 (quoting *Douglas*, 110 So. 3d at 430). To meet the threshold requirement of class membership, an individual (or survivor) must show that he, she, or the decedent "have suffered, presently suffer or have died from diseases and medical conditions caused by their addiction to cigarettes containing nicotine." *Douglas*, 110 So. 3d at 422 (quoting *Engle I*, 672 So. 2d at 40, 42).

## II. This Action

This case was filed as an individual action on November 27, 2009. (Doc. 1.) Plaintiff William Starbuck began smoking regularly when he was fourteen or fifteen years old and continued to do so for four decades. (Tr. Trans., V-289.) He suffered from both lung cancer, (*id.* at VI-163, 192), and chronic obstructive pulmonary disease ("COPD"), (*id.* at VII-59; VI-191 to 192), before he ultimately died in October 2016, (*id.* at VII-72).

4

This case has been tried three times. On May 6, 2014, a jury trial began before Judge James Carr of the Northern District of Ohio (*Starbuck I*). Trial lasted nine days and the matter was submitted to the jury for determination. On May 19, 2014, Judge Carr granted Philip Morris' oral motion for mistrial because the jury could not reach a verdict. (*See* Docs. 97, 98.)

A second jury trial began on December 1, 2014, before Judge Mark W. Bennett of the Northern District of Iowa (*Starbuck II*). That trial lasted eleven days and resulted in a defense verdict. (Doc. 228.) The jury concluded that Starbuck was not addicted to cigarettes containing nicotine on or before November 21, 1996. (Doc. 228.) Because addiction is a prerequisite to class membership, which is a threshold question, the jury did not address any of the other claims. (*Id.*) On March 10, 2015, Plaintiff William Starbuck moved for a new trial. (Doc. 260). Judge Bennett granted that motion, finding that the jury's determination that Starbuck was not addicted to cigarettes went against the great weight of the evidence.[1] (*See* Doc. 266.)

Thus, a third jury trial (*Starbuck III*) was held in October/November 2018 before the undersigned. Because William Starbuck died in 2016, Eddie O.

---

[1] Judge Bennett rejected the other two grounds raised by Starbuck, which included juror misconduct related to a juror looking up the dictionary definition of "addiction" and a challenge to the instruction limiting the addiction timeframe (i.e., that Starbuck had the burden to show he was addicted prior to November 21, 1996, the cut-off date for the *Engle* class). (Doc. 266.) Judge Bennett did note, however, that the juror misconduct tipped the scales in favor of a new trial. (*Id.* at 44 n.5.)

Starbuck, Mr. Starbuck's wife and the personal representative of his Estate, was substituted as plaintiff (hereinafter "Plaintiff"). (Docs. 279, 284.) She filed a Second Amended Complaint on May 10, 2018, alleging both wrongful death and survival causes of action. (Doc. 286.) Trial commenced on October 29, 2018, and lasted eight days. Just like the jury in *Starbuck II*, the jury found that William Starbuck was not addicted to cigarettes containing nicotine, thereby returning a verdict for the defendants. (*Compare* Doc. 228 *with* Doc. 384.) As a result, Plaintiff seeks a fourth trial, maintaining that the jury's "not addicted" verdict, like that in *Starbuck II*, is against the great weight of the evidence and should be set aside yet again.

As was the case in *Starbuck II*, the fundamental question is whether a jury could find, based on the record in the case, that William Starbuck was not addicted to cigarettes containing nicotine. Ultimately, while a jury could reasonably have found that William Starbuck was addicted, the jury's actual finding to the contrary is not so inconsistent with the record "that it would be a miscarriage of justice to let the verdict stand." *United States v. Martinez*, 763 F.2d 1297, 1313 (11th Cir. 1985). Plaintiff's motion for a new trial is denied.

## LEGAL STANDARD

A district court may grant a motion for new trial "only if the verdict is against the great, not just the greater, weight of the evidence." *Ard v. Sw. Forest Indus.*, 849 F.2d 517, 520 (11th Cir. 1988). In so determining, a trial judge may

not "substitute his judgment for that of the jury on questions of fact," *id.*, but "must defer to the jury's determination when issues of credibility are involved or the facts are in sharp conflict," *id.* at 522. "[A] court may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable." *Martinez*, 763 F.2d at 1312–13. "Motions for new trials based on weight of the evidence are not favored" and should only be granted in "exceptional cases." *Id.* at 1313 (internal quotation marks omitted).

## ANALYSIS

Plaintiff insists a new trial is warranted in light of the overwhelming evidence presented by her expert, Dr. Neil Grunberg, (Doc. 402 at 2–5), and the unconvincing evidence presented by the defense expert, Dr. Christopher Ticknor, (*id.* at 5–7), on the question of addiction. Plaintiff also relies heavily on Judge Bennett's ruling in *Starbuck II* and his criticism of Dr. Ticknor. Defendants, on the other hand, argue that the question of addiction is a "quintessential fact issue" and in the absence of a "specific legal definition that the jury was instructed to apply," the verdict should stand. (Doc. 403 at 3, 4.) Defendants have the better argument.

A new trial is not warranted for a number of reasons, least of which is that the defugalties surrounding the term "addiction" come as no surprise. Not only was the matter thoroughly addressed by Judge Bennett in his 56-page order, (*see* Doc. 266), but the parties were specifically asked at the September 2018 final

7

pretrial conference whether "addiction" should be defined for the jury, (*see* Trans., Doc. 357 at 75–80). Despite this ominous foreshadowing, both sides emphatically rejected the Court's suggestion and the idea that the Court instruct the jury on a legal definition of addiction, insisting that there would be a battle of the experts at trial, with each side weighing in on the fact question of what it means to be addicted in the context of this case. (*Id.*) Nor did Plaintiff seek any ruling as matter of law on the question of addiction, either pretrial or through a Rule 50 motion. Thus, the question of addiction was a disputed fact question, which fell squarely within the purview of the jury.

But, Plaintiff argues the jury could not have reached the verdict it did based on the evidence presented. While that may have been the case in *Starbuck II*, Plaintiff's motion must be considered on the record presented in *Starbuck III*. The crux of Plaintiff's argument is that the jury was required to apply the definition of addiction provided by the National Institute of Drug Abuse ("NIDA") and testified to by Dr. Grunberg and conclude, applying that definition, that William Starbuck was addicted to cigarettes. There is no real dispute that Dr. Grunberg (in addition to Plaintiff's other experts) provided testimony upon which the jury could conclude that William Starbuck was addicted to the nicotine in cigarettes. But that alone is insufficient to obtain relief on the present motion; Plaintiff must show that the contrary conclusion, i.e., that William Starbuck was not addicted, is "against the clear weight of the evidence." *Lipphardt v. Durango Steakhouse of Brandon, Inc.*,

8

267 F.3d 1183, 1186 (11th Cir. 2001) (internal quotation marks omitted). She fails to do so.

As argued by Defendants, because the jury was not provided with a legal definition of "addiction," it was required to suss out the concept on its own. And, contrary to Plaintiff's contention, Dr. Ticknor provided an alternative view of addiction through the DSM-V and its criteria for a substance abuse disorder. (Tr. Trans., VII-286 to 299.) While Plaintiff presented evidence potentially undermining Dr. Ticknor's conclusions and the application of the DSM-V in this context, (*id.* VII-312 to 320), weighing that evidence and Dr. Ticknor's credibility fell directly within the jury's purview.[2] According to Plaintiff, "Dr. Ticknor's testimony is at odds with direct, undisputed evidence, and with reality itself." (Doc. 402 at 7.) But Dr. Ticknor directly addressed the propriety of using the DSM-V to assess nicotine addiction and dependence and the relationship between the DSM-V and Plaintiff's proposed framework provided by NIDA. As made clear during cross-examination, Dr. Ticknor took the position that the DSM-V and the NIDA definition have recently become more consistent. (Tr. Trans., VIII-5 to 6.) [3] He also reviewed William Starbuck's medical records and interviewed him

---

[2] If Plaintiff believed that Dr. Ticknor's application of the DSM-V was irrelevant or unreliable in light of Judge Bennett's ruling, Plaintiff could have sought to limit that testimony or exclude it under Rule 702 of the Federal Rules of Evidence.
[3] Dr. Ticknor testified that NIDA now equates the DSM-V's definition of "substance use disorder" with "addiction." (Tr. Trans., VII-287.) This addresses a prominent concern Judge Bennett had in his order granting a new trial, where he

9

personally before drawing his conclusions. (*Id.* at VII-252 to 253, 263 to 264.) Ultimately, Dr. Ticknor's testimony provided a basis upon which the jury could conclude that William Starbuck was not addicted to cigarettes.

Moreover, the jury could have reached its verdict even if it gave little weight to Dr. Ticknor's testimony. For example, the jury could have accepted Dr. Grunberg's NIDA definition of addiction yet found it inconsistent with William Starbuck's conduct. William Starbuck's own testimony, statements, and medical records demonstrated inconsistencies in how much he smoked, (*id.* at VI-107 to 108, 190 to 191; VII-272), why he smoked, (*id.* at VI-123 to 124), how often he tried to quit, (*id.* at VI-111 to 113; VI-122 to 123), and what cessation aids he used, (*id.* at VI-114 to 120). There was additional testimony that William Starbuck was extremely stubborn and would do the opposite of what he was told, including when family members told him to quit smoking. (*Id.* at VI-70, 76, 113 to 114.) As a result, there was evidence in the record that William Starbuck's smoking could have been the result of his personal choice rather than addiction.

As argued by Defendants, in the absence of a legal definition of addiction or finding that William Starbuck was addicted as a matter of law, the jury had both

---

essentially determined that Dr. Ticknor's reliance on the DSM-V rendered his contrary opinion invalid because the DSM-V does not define addiction, whereas NIDA did. (Doc. 266 at 39-40, 43.) The fact that NIDA now equates "addiction" with the DSM-V's definition of a substance use disorder differentiates this trial from *Starbuck II* and mitigates the concern Judge Bennett expressed about Dr. Ticknor's reliance on the DSM-V.

10

the opportunity—and obligation—to make a factual determination regarding what "addiction" means and whether William Starbuck was addicted to the nicotine in cigarettes. In so doing, the jury considered competing expert and fact testimony that it was free to accept or reject. It ultimately determined that he was not addicted. This is not the "exceptional case" where that decision must be set aside. *Martinez*, 763 F.2d at 1313.

Trials are time-consuming and expensive for the public and for all parties involved. Out of three juries that have heard this case, not one has been able to return a verdict for the plaintiff. Two separate juries have reached the exact same conclusion: that William Starbuck was not addicted to cigarettes containing nicotine. It is extraordinary enough for a judge to cast aside a jury's verdict because it is against the great weight of the evidence. It would be even more extraordinary to cast aside *two* juries' identical verdicts, reached independently of each other and on different proof. The jury's verdict was not so contrary to the great weight of the evidence that the Court will override it yet again.

## Conclusion

Plaintiff's motion for new trial (Doc. 402) is DENIED.

DATED this 7th day of January, 2019.

Donald W. Molloy, District Judge
United States District Court

11